The CLARKSON COMPANY LIMITED, as Trustee in Bankruptcy, appointed by the Supreme Court of the Province of Newfoundland, of the property of Newfoundland Refining Company Limited and Provincial Refining Company Limited, Plaintiff-Appellee,

v.

John M. SHAHEEN, Roy M. Furmark, Albin W. Smith, Peter L. Caras, Paul W. Rishell, Shaheen Natural Resources Company, Inc., Newfoundland Refining Company Ltd., U. S. A. and Founders Corporation, Defendants-Appellants,

Philip Gandert, William J. Sheridan, Defendants.

Nos. 765–767 and 778, Dockets 80–7664, 80–7712, 80–7754 and 80–7790.

United States Court of Appeals, Second Circuit.

Argued April 20, 1981.

Decided Sept. 15, 1981.

Thomas A. Andrews, New York City (Saxe, Bacon & Bolan, P. C., New York City, Howard F. Husum, Filip L. Tiffenberg, New York City, of counsel), for defendants-appellants John M. Shaheen, Shaheen Natural Resources Co., Inc., New-

foundland Refining Co. Ltd., U.S.A., and Founders Corp.

Donald B. DaParma, New York City (Breed, Abbott & Morgan, Robert Ferri, New York City, of counsel), for defendant-appellant, Roy M. Furmark.

Lola S. Lea, New York City, for defendants-appellants Albin W. Smith, Paul W. Rishell, and Peter L. Caras.

Jeffrey Barist, New York City (White & Case, Edna R. Sussman, Kevin D. Ashley, New York City, of counsel), for plaintiff-appellee.

Before LUMBARD and MESKILL, Circuit Judges, and MacMAHON,* District Judge.

LUMBARD, Circuit Judge:

This is an appeal from a judgment won in the Southern District of New York by The Clarkson Company Limited, the Newfoundland trustee in bankruptcy of Newfoundland Refining Company Limited (NRC), suing in diversity jurisdiction to recover monies advanced or loaned by NRC to John Shaheen and companies controlled by him (the Shaheen group), and to recover damages from five individual directors of NRC for causing such loans to be made. At trial, the jury found that Shaheen and his companies owed a total of $50 million to NRC; of this, $30 million, consisting of loans made by NRC to the Shaheen group during 1974 and 1975, was advanced when NRC was insolvent, without fair consideration, and hence was fraudulent to creditors and in violation of sections 273 and 274 of the New York Debtor and Creditor Law. A Promissory Note and Letter Agreement executed in October, 1975 was found fraudulent for the same reasons. The judgment ordered the Shaheen group to repay the $50 million in loans; held the five directors jointly and severally liable with the Shaheen group for the $30 million fraudulently loaned in 1974 and 1975; held the five directors jointly and

severally liable for the $23 million in damages caused by entering into the Promissory Note; and declared the Promissory Note null and void. The $30 million sum assessed against the directors for breach of the fiduciary duty owed to creditors was apportioned according to the percentage amounts assigned by the jury against each.[1]

The defendants allege numerous errors, chiefly the insufficiency of the evidence to support the verdict, and numerous rulings by the district court in the exclusion of evidence and the charge to the jury. Most of these contentions are disposed of by a consideration of the evidence, which we find amply supported the verdicts. However, we find unjustified on this record the unapportioned liability of the individual directors for the $23 million damages on the Promissory Note. We hold that that amount must also be apportioned in the same percentages as determined by the jury for the $30 million advanced during 1974 and 1975. In all other respects, the judgment is affirmed.

In 1968, Newfoundland Refining Company Limited was organized under the laws of the Province of Newfoundland to build and operate an oil refinery at Come-By-Chance, Newfoundland. Title to the refinery was in Provincial Refining Company, Ltd. (PRC), a joint venture of NRC and the Newfoundland Government, and NRC was to construct and operate the refinery. NRC was part of a complex of corporations directly or indirectly controlled by John Shaheen; its books and records were kept in Shaheen's New York City headquarters.

On March 12, 1976, NRC and PRC were found to be bankrupt by the Chief Justice of Newfoundland, who presided over a week-long hearing. During that hearing, the Shaheen group contested the bankruptcy petition filed by an assignee of Ataka America, Inc., the Japanese controlled organization that had advanced to NRC part of the money to build and operate the refin-

---

* Honorable Lloyd F. MacMahon, of the United States District Court for the Southern District of New York, sitting by designation.

1. The $23 million in damages assessed against the individual directors for causing NRC to execute the Promissory Note was not apportioned.

ery.[2] The Clarkson Company was appointed trustee and the Supreme Court of Canada affirmed. Both during and after this proceeding, the Shaheen group sued in the federal and state courts in New York attacking the Canadian bankruptcy adjudication and, later, Clarkson's performance as trustee. These suits were all dismissed.[3]

When Shaheen denied Clarkson access to, and possession of, the records of the bankrupt companies, Clarkson brought suit in the Southern District to compel delivery of the records. Judge Owen granted Clarkson a preliminary injunction and we affirmed. 544 F.2d 624 (1976). As to Shaheen's attack on the Canadian proceedings, we found that

Shaheen had "not shown enough at this stage to cast doubt on the Canadian judgment." Clarkson then moved to amend its complaint to add the claims regarding monies advanced to the Shaheen group and to add as defendants three additional recipients of monies advanced by the bankrupts.

The district court granted Clarkson's motion to amend the complaint, and granted a permanent injunction giving Clarkson the NRC and PRC records. It also denied the Shaheen motion to amend the answer to include charges of fraud in the procurement of the Newfoundland bankruptcy. Judge Owen held that the proposed amended an-

2. At the Canadian bankruptcy hearing, the Shaheen group charged that Ataka had conspired to force NRC into bankruptcy to avoid its commitment to provide additional financing for the troubled project. Shaheen also alleged that the assignment of Ataka's claims against NRC to the subsidiary that filed the bankruptcy petition was illegal and that Ataka had converted funds belonging to NRC and PRC. The Canadian court rejected all these claims.

3. The first suit by the Shaheen group sought to enjoin Ataka and other creditors of NRC from participating in the bankruptcy proceedings, alleging that they had made fraudulent misrepresentations to the Newfoundland Supreme Court to obtain the appointment of Clarkson as trustee. Plaintiffs voluntarily dismissed the suit after the federal judge held hearings but before a decision was rendered. *Newfoundland Refining Company Limited and Provincial Refining Company Limited v. Ataka America, Inc., Ataka & Co., Ltd., Atlantic Trading (Delaware) Corp. and The Sumitomo Bank, Ltd.*, 76 Civ. 941 (S.D.N.Y.1976). Plaintiffs then brought a similar suit in Supreme Court, New York County. *SNR Holdings, Inc. as sole stockholder of Newfoundland Refining Company Limited and Provincial Refining Company Limited v. Ataka America, Inc., Ataka & Co., Ltd., Atlantic Trading (Delaware) Corp., The Sumitomo Bank Ltd., Morgan, Stanley & Co., Inc., Clarkson & Co. Limited, Clarkson, Gordon & Co., Kleinwort Benson Limited and the Government of the Province of Newfoundland and Labrador* (Sup.Ct., N.Y. Co., Index No. 03959/1976). The judge denied the motion for a preliminary injunction and the Appellate Division affirmed. 58 A.D.2d 547, 396 N.Y.S.2d 11 (1977). The complaint for damages was then dismissed by a justice of the Supreme Court, and again the Appellate Division affirmed. 63 A.D.2d 890, 405 N.Y.S.2d 1015 (1978). The Court of Appeals denied leave to appeal on October 31, 1978.

After Clarkson's appointment as trustee was affirmed by the Canadian Supreme Court, the Shaheen group sued again in New York state court to enjoin Clarkson from acting under a first mortgage on the refinery, alleging fraud in Clarkson's appointment. The court dismissed the complaint. *Provincial Refining Company Limited and SNR Dover Incorporated v. Kleinwort Benson Ltd. and The Clarkson Company Limited* (Sup.Ct., N.Y. Co., Index No. 03740/1976), *aff'd* 67 A.D.2d 896, 413 N.Y.S.2d 617 (1979). The Shaheen group then brought an almost identical suit to prevent Clarkson from acting on a second mortgage on the refinery. This complaint was dismissed on November 7, 1977. *Provincial Refining Company Limited and SNR Dover Incorporated v. Government of the Province of Newfoundland and The Clarkson Company Limited* (Sup.Ct., N.Y. Co., Index No. 03960/1976), *aff'd.*, 403 N.Y.S.2d 166 (1978).

Another suit sought to enjoin Ataka's assignee from enforcing any claims against NRC and PRC, alleging the assignments violated New York law. Again, the state court dismissed the complaint. *Shaheen Natural Resources Company, Inc., Roy M. Furmark, Homer White, and SNR Holdings, Inc. v. Atlantic Trading (Delaware) Corp.* (Sup.Ct., N.Y. Co., Index No. 07932/1976), *aff'd.* 58 A.D.2d 532, 395 N.Y.S.2d 401 (1977), *motion to vacate denied*, 59 A.D.2d 863 (1977).

The last of Shaheen's unsuccessful suits was one for damages against Sumitomo Bank, Ltd., Ataka's main bank in the refinery project, alleging that Sumitomo had converted sums deposited with it by PRC. On January 21, 1977, this one was dismissed with prejudice. *Shaheen Natural Resources Company Inc., Roy M. Furmark, Homer White and SNR Holdings, Inc. v. The Sumitomo Bank Ltd.* (Sup.Ct., N.Y. Co., Index No. 09810/1976).

swer, asserting allegations of wrong-doing "on information and belief" without stating any factual basis for the allegation, did not conform to the pleading requirements of Fed.R.Civ.P. 9(b), and that the acts alleged as constituting the "fraud" had either been "rejected time and time again" or related to Clarkson's conduct as trustee and were irrelevant to the claim of a fraudulent appointment. Later, Judge Owen struck from the Shaheen answer to Clarkson's amended complaint similar allegations of fraud asserted to contest Clarkson's standing. The Shaheen defendants attack these orders on this appeal.

At the trial in June, 1980, the evidence regarding moneys advanced to the Shaheen group was virtually undisputed. From 1972 until bankruptcy in March, 1976, NRC's books showed that it loaned over $51 million to Shaheen and Shaheen controlled corporations.

| | |
|---|---|
| John M. Shaheen | $ 501,231 |
| Shaheen National Resources Company, Inc. (SNR) | 46,049,040 |
| Newfoundland Refining Company Ltd., U.S.A. (NRC, Ltd. U.S.A.) | 2,344,268 |
| Founders | 548,392 |
| Newfoundland Pulp & Chemical Co. Limited | 2,156,952 |
| Canadian Caribbean Oil Co. Limited | 145,747 |
| Shaheen Natural Resources Co. Limited | 265,012 |

The individual defendants, Shaheen, Furmark, Smith, Caras and Rishell, were directors of NRC and various other Shaheen companies at the time of the loans. Furmark was Vice Chairman of the Board of Directors, Executive Vice President and Treasurer of NRC, and Smith, Caras and Rishell were directors and officers of NRC, from at least 1972 to the bankruptcy in March 1976. Each of these defendants also served as officers and directors of other Shaheen related companies, including corporations which were the recipients of funds from NRC. Of the six Shaheen corporations to which NRC loaned money, Shaheen was a director and controlling person of each; Furmark was an officer and director of each; and Caras an officer or director of five.

The loans made during 1974 and 1975 were made at the direction of Shaheen or Furmark or both Shaheen and Furmark, according to Caras. Furmark, Caras and Smith each participated in the making of the loans by signing checks. Caras, who signed checks for over $9 million in loans, testified that he did not know the purpose of a single payment for which he signed checks, either at the time he signed them or thereafter. Caras and Rishell, both directors of NRC, could not recall attending any meeting of the NRC Board, receiving any minutes of Board Meetings, reviewing any financial information, knowing that NRC had made loans to any other Shaheen company, or making any inquiry as to the use of the funds that NRC was lending to Shaheen and his other companies.

The loans were recorded on the books of NRC as an "open account." Clarkson contended that the loans when made were due on demand, as evidenced by the fact that they were carried on the books of NRC without due date, and that NRC's outside auditors, Coopers & Lybrand, and NRC's internal accounting staff understood the loans to be due on demand.

In October 1975 Shaheen and Furmark directed that the debts owing from Shaheen and his corporation to NRC be reset to be due in 1985 by means of a Letter Agreement between NRC to SNR, a Promissory Note, and a letter from NRC to SNR, all dated October 27, 1975. According to the Letter Agreement, all open account indebtedness owing to NRC from 29 Shaheen affiliates, including the defendant corporations, and from seven individuals, including Shaheen, Furmark, Caras and Rishell, was cancelled in exchange for SNR's promise on behalf of the others to enter into a promissory note for the total amount due, at 6% interest per annum, *with payment of interest and principal deferred until June 30, 1985.* By letter of the same date NRC requested SNR to have the SNR debt stated in a promissory note. The Promissory Note, also dated October 27, 1975, purports to restate SNR's indebtedness to NRC, is in the amount of $45,481,076, at 6% interest

per annum, interest and principal due on June 30, 1985, and states that it is to be construed in harmony with the Letter Agreement. The Letter Agreement, the Promissory Note and the Letter were purportedly signed by Caras on behalf of SNR. Caras admitted his signature, but said that he had no recollection of the transaction or even of having signed the documents. Shaheen and Furmark testified that the Promissory Note merely memorialized the pre-existing intention of all the parties and that they directed the roll-over on October 27 because they were about to turn over control of NRC to its creditors. On October 23, 1975, the First National Bank of Chicago claimed default on notes of PRC aggregating $28,000,000. NRC, PRC's parent, was then insolvent according to an internally prepared financial statement at June 30, 1975. Thereafter, negotiations were conducted among creditors of NRC and PRC and the Shaheen interests to restructure the debts of NRC and PRC, ultimately resulting in a draft agreement dated October 28, 1975, which provided for creditor control of NRC. In an affidavit Furmark explained that the October 1975 agreement contemplated that creditors "would have assumed effective control" of NRC and that "in view of the impending transfer of control of" NRC "I concluded that it would be desirable to reset the obligations of Shaheen Natural Resources Company, Inc. to Newfoundland Refining Company Limited ... on a long-term basis ...." The books and records of NRC did not disclose that NRC received any consideration or benefit, or that any business purpose of NRC was served by the loans or the roll-over.

The court put ten special questions to the jury, the pertinent answers to which may be summarized, as follows:

1. The loans to the defendants that were unpaid as of March 13, 1976 were:

| | |
|---|---|
| John M. Shaheen | $ 501,231 |
| SNR | 46,049,040 |
| NRC, Ltd. U.S.A. | 2,344,268 |
| Founders Corp. | 548,392 |

2. The loans to the defendants were due on demand and not in 1985 as the defendants claimed.

3. In 1974 and 1975 NRC was insolvent and the $30 million in loans made in those years violated sections 273 and 274 of the New York Debtor and Creditor Law.

4. In October 1975, at the time of the Promissory Note and Letter Agreement, NRC was insolvent. The Promissory Note and Letter Agreement violated sections 273, 274 and 276 of the New York Debtor and Creditor Law.

Immediately after receiving the jury verdict, Judge Owen, who sat simultaneously as an equity judge on the claim to invalidate the Promissory Note of October, 1975, held the note to be a nullity on the basis of similar findings:

> [T]he intention of the parties at the outset of these advances was that they be due upon demand, ... as of October 1975 NRC was insolvent and ... the note and related papers that were issued at the same time were a fraudulent conveyance without consideration with intent to hinder, delay and defraud creditors ....

The jury also found that the five individual defendants had breached their fiduciary duty to NRC and its creditors with respect to (a) the making of loans and advances in 1974 and 1975, and (b) the making of the Promissory Note of October 1975.

Of the $30,609,026 advanced in 1974 and 1975, the jury found that damage had been caused by the individual defendants in the following percentages of that amount:

| | |
|---|---|
| Shaheen | 74% |
| Furmark | 20 |
| Smith | 2 |
| Caras | 2 |
| Rishell | 2 |

Counsel had already stipulated that, if the jury found liability on the Promissory Note, the damages were $23,073,792 (the unpaid interest, computed at 6%, on the principal amount of the Note from March, 1976, to the date of judgment). Judgment was thereafter entered on July 22, 1980 and a motion of the director defendants for judgment n.o.v. was denied. This appeal followed.

## THE COURT'S CHARGE

We find no error in the court's charge. Although the court first charged that the mere fact that inter-company advances were carried on an open account established that they were due on demand, this was later corrected to make it clear that it was for the jury to decide whether such loans were due on demand. Defendants' counsel expressed satisfaction with this correction.

[1, 2] The director defendants claim reversible error in the court's charge with respect to their liability for breach of their fiduciary duties to the creditors.[4] We disagree. Judge Owen charged that directors have an affirmative duty to inform themselves about the affairs of the corporation. He coupled with that a limitation of that duty to the effect that a director may rely on information, opinions, reports or statements including financial data prepared by persons regarding matters which the director believes to be within the competence of such persons as long as the director is acting in good faith and with care in so doing, reading from section 717 of the New York Business Corporation Law. The court emphasized that liability of the directors must be based on a finding that the directors knew or should have known of advances being made for less than a fair consideration while NRC was insolvent.

The defendants assert that under New York law, a director's duty to the creditors arises not upon insolvency, but only when liquidation is "imminent and foreseeable." Defendants cite no New York cases for this proposition. We find the New York rule plainly stated in *New York Credit Men's Adjustment Bureau, Inc. v. Weiss*, 305 N.Y. 1, 7, 110 N.E.2d 397 (1953), where the New York Court of Appeals held:

> If the corporation was insolvent at that time it is clear that defendants, as officers and directors thereof, were to be considered as though trustees of the property for the corporate-beneficiaries.

The defendants' claim that the duty of directors flows only to the corporation and not to the creditors "until it is clear that the corporation is no longer a going concern" flies in the face of the New York policy to preserve the assets of insolvent corporations for the creditors. *See Ward v. City Trust Co. of New York*, 192 N.Y. 61, 74, 84 N.E. 585, 589 (1908). Thus, the district court's charge was proper.[5]

## SUFFICIENCY OF THE EVIDENCE

The assertions of the individual defendants[6] that the jury's verdict was not

---

4. Even though NRC is a Canadian corporation, the district court applied New York law in determining the obligations of the directors to the creditors and trustee of the corporation. We agree that New York law applies. Fed.R. Civ.P. 44.1 requires parties to give written notice, in the pleadings or otherwise, of their intention to assert foreign law. Here, none of the parties claimed the applicability of Canadian law or asserted that it differs from that of New York. Each seems to have assumed that New York law governs. Hence, the district court was not obligated to take judicial notice of Canadian law and correctly applied forum law. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 452 F.Supp. 1108, 1112 n.3 (S.D.N.Y.1978), *remanded*, 607 F.2d 994 (2d Cir. 1979). Even if the issue were not waived, the presence of NRC's headquarters and several of its creditors in New York, and the fact that many of the transactions in issue took place in New York, are sufficient contacts to invoke the application of New York law intended to protect New York creditors. *See Armstrong v. Rangaire Corp.*, 493 F.Supp. 390 (S.D.

N.Y.1980); *Intercontinental Planning, Ltd. v. Daystrom*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969).

5. Defendants also claim that the trustee is barred from asserting a claim for waste of assets against them because the shareholders in whose behalf the trustee is suing would be estopped from raising that claim. Alternatively, they claim that the sole shareholder of NRC, SRC, ratified the loans and hence the trustee may not sue on behalf of NRC. Because we find that the trustee may sue on behalf of the creditors for the breach of the fiduciary duty owed them by the directors, we need not examine the claim that the trustee may not sue on NRC's or the shareholder's behalf.

6. It should be noted that we are not required to examine the assertions of Shaheen and of the Shaheen group that the jury's verdict was not supported by sufficient evidence. As these defendants never moved for a direct verdict, for judgment n. o. v., or for a new trial, these

supported by the evidence is without merit. There was abundant evidence that NRC was hopelessly insolvent at the times in 1974 and 1975 when sums aggregating over $30 million were "loaned" to Shaheen and his controlled companies. The New York Debtor and Creditor Law § 271 provides that a debtor is insolvent "when the present fair salable value of his assets is less than the amount that will be required to pay his future liability of his existing debts as they become absolute and matured." Here, the largest part of NRC's assets were receivables from NRC affiliates that were mostly uncollectible. Only if the jury was willing to accept expert testimony that the reproduction cost of the refinery was several hundred million dollars and that this was an accurate measure of its "fair salable value" could the jury have found that NRC was not insolvent. The jury's common sense in rejecting such a distorted view is beyond question.

Likewise, there was sufficient evidence to support the finding that the directors knew or should have known that the "loans" were made when NRC was insolvent and without fair consideration. Furmark was the chief financial officer of NRC and actively participated in the challenged transactions. Clearly, the jury was entitled to find that he had actively breached the duty of due care owed to the creditors and had caused 24% of the damages. The jury's determination that each of the remaining directors was responsible for 2% of the damages is also supported by the evidence. These three defendants offered no evidence that they ever attempted to inform themselves about the circumstances surrounding the loans, or that they relied in good faith on the statements of others. From these facts

the jury could have rationally found a negligent breach of the duty of care owed to the creditors.

■ However, we find nothing in the record to support the different treatment of the director defendants with respect to the $30 million advanced in 1974 and 1975 and the $23 million in damages on the Promissory Note. Liability on the former was assessed and apportioned by the jury; the latter amount was stipulated by the parties and the court entered a judgment of joint and several liability without apportionment. Because the facts supporting liability for the $23 million were identical to those supporting liability for the $30 million, the court should have apportioned the damages in both cases. Consequently, we remand with instructions to modify the judgment to assess liability against each defendant for the Promissory Note in the same proportions that the jury assessed liability on the $30 million in "loans."

## RULINGS REGARDING ATAKA

■ Although Shaheen's brief gives a lengthy recital of Ataka's interest in NRC, and its relations with the Shaheen group, and claims error in the court's refusal to charge the jury that it could draw an inference favorable to the defense from Clarkson's failure to produce witnesses or documents from Ataka, we are not persuaded that this evidence was relevant to the issues before the jury—namely, the circumstances of the advance of $30 million to Shaheen and the Shaheen group at times when NRC was insolvent. The defendants showed that Ataka was one of four lenders who provided financing for the construction of the refinery, Ataka advancing $15 million.[7]

assertions of insufficient evidence need not be reviewed by us. *Scientific Holding Co. v. Plessey, Inc.*, 510 F.2d 15, 28 (2d Cir. 1974). Nor is there any showing that we should review the evidence as a matter of discretion in the interests of justice. As we have noted, there was ample evidence to support the jury's findings that NRC was insolvent in 1974 and 1975 and that Shaheen had breached the duty owed by directors to the creditors in causing NRC to make loans without fair consideration in those

years. Likewise, there was ample evidence that the loans to the Shaheen group were due on demand and not in 1985 as the defendants claimed. Plaintiff offered expert testimony, outside auditor's reports, and internal accounting reports to prove that the loans were due on demand. We see no reason to disturb that finding.

7. The three other initial lenders were Kleinwort Benson, First National Bank of Chicago, and the government of Newfoundland. When NRC

Later Ataka loaned NRC an additional $42 million. Ataka also committed itself to provide $300 million in financing to the Shaheen group. Thereafter, in 1976 Ataka initiated the bankruptcy proceedings in Newfoundland. Any evidence that Ataka might give with respect to the issues was equally available to the defendants and to Clarkson. During more than two years before trial no effort had been made by the defendants to make any such evidence available. Moreover, there was no showing that any evidence which might have been produced was in any respect relevant. The claims about fraud and conspiracy on the part of Ataka appear to have been nothing more than a smoke-screen, without any merit.

### THE VERDICT AGAINST DIRECTORS

■ The appellants, Smith, Caras and Rishell argue that the verdict as to the $30 million in loans made while NRC was insolvent cannot stand because it was a result of compromise and confusion. They claim that although the jury was charged as to joint and several liability of the directors, the verdict was rendered by apportioning the liability and finding these three directors each liable for 2%. Where, as here, the jury assessed damages in the total amount of $30 million, there was no compromise. There was simply an apportionment in accordance with the jury's assessment of the part played by each individual defendant in causing the damages. The court's handling of the damages to be assessed against the individual defendants, and the jury's response thereto, was certainly more favorable to each defendant than would have been the case had the assessment been joint and several. In any event, as the director defendants made no

contention in the district court about the verdict being an improper compromise, we need not consider their claims here. *Calcagni v. Hudson Waterways Corp.*, 603 F.2d 1049 (2d Cir. 1979); *Terkildsen v. Waters*, 481 F.2d 201, 204–5 (2d Cir. 1973).

### INVESTIGATION OF A JUROR

■ The appellants complain of the district court's refusal to permit investigation into possible prejudicial misrepresentations by a juror on *voir dire*. The juror disclosed during *voir dire* her employment by Credit Lyonnais Bank and that she was an officer. The court asked the jurors if any of them knew any of the defendants, and the failure of the jurors to respond indicated a negative answer. No further questions were asked regarding her employment at the bank. After the verdict, on July 25, 1980, Founders Corporation moved for a new trial, or in the alternative for a hearing to determine whether the juror made any misrepresentations on the *voir dire*. Judge Owen denied the motion and ordered that any inquiry regarding the juror should cease.[8] Obviously, the motion was based on pure speculation that the juror, a junior officer in the bank, would have known of Shaheen or any of the others. There was no reason to believe that the juror had not responded properly. Under all the circumstances Judge Owen acted properly in denying the motion and in censuring the parties in making such a flimsy claim.

■ The remaining claims of error merit only brief mention. The district court's denial of the Shaheen defendants' motion to amend their answer to assert unparticularized allegations of fraud in the

---

went bankrupt, its various creditors filed claims in the following amounts: preferred creditors, $16 million; unsecured creditors, $75 million; contingent creditors, $300 million. Its assets consisted primarily of the monies owed it by Shaheen and the Shaheen companies.

8. After the jury returned its verdict, Shaheen and Rishell contacted the Credit Lyonnais Bank, and complained that the juror had been a

"leader," who had tried to "hang" Shaheen, and that "as to a certain deal in the corporate area [between Shaheen and the Bank] that she blew the deal...." The juror complained to the judge, who called in the lawyers for the defendants, told them of the harassment, and ordered them to tell their clients to cease all communications directly or indirectly with any jurors.

Newfoundland bankruptcy proceeding and Clarkson's appointment was proper. Nor was there error in Judge Owen's ruling that the New York Banking Law did not prohibit a foreign trustee from bringing suit in New York.

The district court is directed to amend the judgment to assess liability for the $23 million damages on the Promissory Note in the same proportions that the jury assessed liability for the $30 million in loans made during NRC's insolvency. In all other respects, the judgment is affirmed.

Affirmed; judgment amended.