Marjorie REICHMAN,
Plaintiff-Appellee,

v.

BONSIGNORE, BRIGNATI & MAZZOTTA P.C.; Bonsignore, Brignati & Mazzotta P.C. Pension Plan, Defendants-Appellants.

No. 990, Docket 86–9058.

United States Court of Appeals,
Second Circuit.

Argued March 30, 1987.

Decided May 11, 1987.

Jean L. Schmidt, New York City (Roberts & Finger, Barry Asen, of counsel), for defendants-appellants.

Melvyn R. Leventhal, New York City (Meister Leventhal & Slade, Brenda Wright, of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, MESKILL and ALTIMARI, Circuit Judges.

FEINBERG, Chief Judge:

Bonsignore, Brignati & Mazzotta P.C. (BBM) and Bonsignore, Brignati & Mazzotta P.C. Pension Plan (the Pension Plan) appeal from a judgment of the United States District Court for the Southern District of New York, Robert J. Ward, J., finding that BBM, by firing plaintiff-appellee Marjorie Reichman, had violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (ADEA), and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. (ERISA). Appellants argue that the district court committed reversible error by allowing prejudicial evidence on the ADEA and ERISA claims and that the evidence was insufficient to support judgment on the latter. Appellants also claim that, in any event, the district court erred in awarding liquidated damages under the ADEA, that the imposition of liquidated damages precluded the award of prejudgment interest and that the grant of attorney's fees to plaintiff was excessive. We affirm.

## I. Background

In August 1974, BBM, an architectural firm, hired Reichman as a bookkeeper. Shortly after she started working at BBM, Reichman, who was then 54 years old, began participating in the Pension Plan. During the ensuing years, Reichman was promoted to comptroller; her duties included handling and supervising a variety of bookkeeping and accounting functions. In September 1984, ten months before Reichman's pension rights would have fully vested, BBM fired her. Upon her discharge, Reichman received approximately $43,500 in a lump sum payment, the amount of her vested pension benefits. However, almost $60,000 in unvested pension benefits, which Reichman would have been entitled to had she remained at BBM for another ten months, remained in the Pension Plan.

Reichman brought suit against BBM and the Pension Plan, contending that BBM discharged her in order to prevent her pension benefits from fully vesting, in violation of both ERISA and the ADEA. The ADEA claim was tried before a jury and the ERISA claim to the court. Appellants contended that Reichman's discharge was due to inadequate job performance. The jury and the court rejected appellants' proffered explanation for the discharge as pretextual and found for Reichman on her claims. The jury awarded Reichman compensatory damages of $85,280 for lost wages and benefits on the ADEA claim and the court allowed the same amount as damages in the alternative on the ERISA claim. Since the jury also found that appellants' violation of the ADEA was willful, the court awarded an additional $85,280 as liquidated damages on the ADEA claim. The court also awarded $10,780.75 in prejudgment interest on these awards and $165,-522.59 in attorney's fees and costs.

Appellants attack both the ADEA and the ERISA verdicts as being against the weight of the evidence. They also contend that Reichman failed to show a willful violation of the ADEA, but argue that if the liquidated damages award is affirmed an award of prejudgment interest is precluded. Finally, appellants argue that the award of attorney's fees and costs is excessive.

## II. Discussion

A. *Sufficiency of the Evidence.* Appellants contend that the record does not support Reichman's claim that BBM fired her in order to save about $60,000 in pension costs. They argue that the court abused its discretion under Rule 403 of the Federal Rules of Evidence by allowing the jury to consider on the ADEA claim irrelevant evidence and arguments about Reichman's pension. Appellants claim that the resulting prejudice requires a new trial. By the same logic, appellants argue on the ERISA claim that the court's finding that Reichman was fired "to prevent her from attaining the fully vested pension benefits" was clearly erroneous and that the other evidence was insufficient to show an ERISA violation. Appellants' contentions on these points require little discussion since there clearly was evidence that Reichman's firing resulted in roughly $60,000 in savings, sufficient to support findings by the jury and the court of an unlawful motivation for Reichman's discharge.

At trial, Bernard Goldberg, who was responsible for calculating BBM's annual pension contributions, testified as appellants' expert witness. Goldberg testified that had Reichman not been terminated by BBM, her vested pension benefit would have increased by almost $60,000 when she reached age 65, ten months after the date she was fired. On cross-examination, Goldberg admitted that the funding for this $60,000, which had already been paid into the Pension Plan, remained in the Pension Plan and could be used to defray the costs of the future funding requirements of the pensions of other BBM employees. Although Goldberg testified that BBM's pension contribution would be only $6,034 less in the first year after Reichman's discharge than it otherwise would have been and that the amount of savings in future years could not be currently determined, his testimony also supported the conclusion that the Pension Plan was $60,000 richer because of Reichman's discharge.

Appellants argue that there was no real savings from Reichman's discharge because the $60,000 that would have gone to Reichman had to be used to fund the pension plans of the two employees hired to replace her. If Reichman had retired in ten months, however, BBM would still have had to fund the pensions of her replacements, *in addition* to paying Reichman the $60,000. The jury certainly could have concluded that appellants anticipated Reichman would retire when her pension became fully vested; indeed, it only awarded Reichman salary and health benefits for the period until she turned 65. Thus, there was ample basis for the triers of fact to determine that appellants fired Reichman to save money from her pension. Accordingly, we will not disturb the determination of the jury or the judge on the ADEA and the ERISA claims.

B. *Liquidated Damages.* The ADEA mandates "liquidated," or double, damages for a prevailing plaintiff in the case of "willful violations" of the statute. 29 U.S.C. § 626(b). As part of a special verdict, the jury found that "defendants acted wilfully, that is, that ... the defendants deliberately, intentionally and knowingly discharged the plaintiff because of her age, and knew that, or showed reckless disregard for whether, such conduct was unlawful." The district court, finding this verdict "amply supported" by the evidence, added $85,280 as liquidated damages to the $85,280 compensatory damages award.

Appellants now argue for the first time that the evidence was insufficient to support a finding of willfulness because there was no direct evidence that the principals of BBM knew they were violating the ADEA. At trial, however, appellants did not seek a directed verdict on the specific issue of willfulness, nor did they object to either the submission of the willfulness issue to the jury or to the form of the special interrogatory concerning willfulness. Under these circumstances, where the specific contention was never called to the district court's attention, "appellate review of the sufficiency of the evidence on that point is inappropriate." *Hegger v. Green,* 646 F.2d 22, 27 (2d Cir.1981) (citations omitted). Cf. *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 85 (2d Cir.1983) (in ADEA case, objections to jury charge not presented to district court could not be raised on appeal).

Of course, this court would have the power to consider appellants' contention were it necessary to prevent a manifest injustice. See *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1437 (11th Cir.1983); *Clarkson Co. v. Shaheen,* 660 F.2d 506, 512 n. 6 (2d Cir.1981), cert. denied, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). In this case, however, we see no plain error. The jury instruction on willfulness was in accord with the law of this circuit. See *Airline Pilots Ass'n, Int'l v. Trans World Airlines, Inc.,* 713 F.2d 940, 956 (2d Cir.1983), aff'd in part and rev'd in part sub nom. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–29, 105 S.Ct. 613, 623–26, 83 L.Ed.2d 523 (1985) (approving definition of willfulness). Furthermore, Reichman testified that she told one of the principals of BBM that she thought she was being harassed because her pension was about to vest and that the principal replied he "wouldn't be at all surprised" if that were the case. Apparently, the jury believed her, as did the district court. In any event, the record as a whole provides a basis for a willfulness finding comparable to others affirmed by this court. See *Bonura v. Chase Manhattan Bank, N.A.,* 795 F.2d 276, 277 (2d Cir.1986) (per curiam). Accordingly, we will not disturb the jury's finding of willfulness.

C. *Prejudgment Interest.* Pursuant to the authorization of the ADEA, the district court granted Reichman an award of $10,780.75 in prejudgment interest, see 29 U.S.C. § 626(b). Appellants argue that an award of liquidated damages precludes an award of prejudgment interest in an ADEA case. We disagree.

In an ADEA case, prejudgment interest is designed to compensate the plaintiff for loss of the use of money wrongfully withheld through an unlawful discharge. However, other circuits have refused to allow prejudgment interest on compensatory damages that are coupled with liqui-

dated damages on the theory that the liquidated damages compensate the plaintiff for "losses that cannot be calculated with certainty." See, e.g., *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1102.(8th Cir.1982); *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1552 (11th Cir.1984). On this view, awarding both prejudgment interest and liquidated damages would provide a double recovery.

The Supreme Court has recently held, however, that liquidated damages under the ADEA are punitive in nature. Rather than serving to compensate the victim, they are designed to deter willful violations of the ADEA. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–26, 105 S.Ct. 613, 623–24, 83 L.Ed.2d 523 (1985). As Judge Ward pointed out in an earlier case, *Bonura v. Chase Manhattan Bank, N.A.*, 629 F.Supp. 353, 363–66 (S.D.N.Y.), aff'd on other grounds, 795 F.2d 276 (2d Cir.1986) (per curiam), "It follows, therefore, that prejudgment interest does not provide a double recovery to victims of age discrimination who have proven their entitlement to liquidated damages as well as back pay." Id. at 365. See *Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 556–57 (9th Cir.1983), aff'd on other grounds, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). Accordingly, we affirm the award of prejudgment interest.

D. *Attorney's Fees and Costs.* Under the ADEA, a prevailing plaintiff is entitled to recover reasonable attorney's fees, *Hagelthorn*, 710 F.2d at 86. Accordingly, the district court awarded $156,156.00 in attorney's fees. Appellants concede that Reichman is entitled to a fee award but raise a variety of arguments in support of their claim that the district court abused its discretion in setting the amount of the award. Only one of these contentions merits extended discussion.

Plaintiff's request for attorney's fees was supported by both affidavits from the billing attorneys and contemporaneous time records, as the law in this circuit requires. See *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983). In submitting the fee request, Reichman's counsel requested compensation for only 85% of the hours actually expended on the case. In addition, the district court considered appellants' specific objections to the fee award and discredited most of them, although it did subtract $13,000 from plaintiff's original request by reducing the billing rate of one of her attorneys. Also, the district court took into account, as it was free to do, the self-imposed percentage reduction of hours by plaintiff's counsel to determine a reasonable award. *New York Ass'n for Retarded Children*, 711 F.2d at 1146. While at least one member of this panel might not have reached the same result as the district court in approving in the first instance the number of hours to be compensated, we cannot say that the district court abused its discretion.

Appellants also claim that the time Reichman's counsel spent presenting her claim to state and federal administrative agencies is not compensable under the ADEA. Reichman argues, relying on *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), that time spent before an administrative agency is compensable under a fee shifting statute if the administrative remedy is a prerequisite to the lawsuit. In *New York Gaslight*, the Court held that in a Title VII suit, attorney's fees may be awarded for time spent before a state administrative agency. The Supreme Court has also held that the requirement of filing with an administrative agency prior to bringing an ADEA claim is "mandatory, not optional." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609 (1979). However, relying in part on a perceived difference between the filing requirements of the ADEA and Title VII, some courts have declined to award fees for administrative proceedings, see, e.g., *Koyen v. Consolidated Edison Co. of New York*, 560 F.Supp. 1161, 1170–71 (S.D. N.Y.1983). We disagree.

By requiring resort, where available, to administrative remedies for age discrimination prior to bringing a suit under the ADEA, Congress intended to give

state agencies a significant role in combatting discrimination in the workplace, similar to the role given state agencies under Title VII. *Oscar Mayer & Co.*, 441 U.S. at 755–56, 99 S.Ct. at 2071–72. "Only authorization of fee awards ensures incorporation of state procedures as a meaningful part of the ... enforcement scheme." *New York Gaslight Club, Inc.*, 447 U.S. at 65, 100 S.Ct. at 2032. (Title VII case). Since Congress specifically authorized fee awards for private plaintiffs under the ADEA, and required that those plaintiffs at least give administrative proceedings a chance before commencing an action in federal court, we conclude that Congress intended a fee award under the ADEA to cover time spent on administrative proceedings that were a prerequisite to the action. See *Bleakley v. Jekyll Island—State Park Authority*, 536 F.Supp. 236, 242–44 (S.D.Ga.1982).

Our holding in this case leaves open the question whether federal employees bringing ADEA actions are entitled to attorney's fees for time spent on administrative proceedings, see *Kennedy v. Whitehurst*, 690 F.2d 951 (D.C.Cir.1982). Nor do we decide whether a fee award is appropriate where the age discrimination claim is completely resolved at the administrative level, cf. *New York Gaslight Club, Inc.*, 447 U.S. at 71–73, 100 S.Ct. at 2034–35 (Stevens, J., concurring).

BBM's final contention is that the district court's award of $9,366.59 in costs and disbursements covered items not authorized by 28 U.S.C. § 1920, which describes the costs that may be awarded to the prevailing party in most civil suits. See Fed.R.Civ.P. 54(d). The district court recognized, however, that awards of attorney's fees in civil rights suits under fee-shifting statutes, such as the ADEA, "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." (citing *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C. Cir.1984), cert. denied, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985)) (other citations omitted). The rationale for this rule is that attorney's fees include expenses that are

"incidental and necessary" to the representation, provided they are "reasonable." *Northcross v. Board of Education*, 611 F.2d 624, 639 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 646 Ed.2d 862 (1980). Under this standard, the objections BBM raises with respect to specific items of costs allowed by the district court do not suffice to show an abuse of discretion. The award of attorney's fees and costs is affirmed.

The judgment of the district court is affirmed.