104 F.3d 356
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Troy SMITH, Plaintiff-Appellant,
v.
Desmond SINCLAIR, Defendant-Appellee.
 No. 95-2477.
 United States Court of Appeals, Second Circuit.
 Dec. 16, 1996.
 
 APPEARING FOR APPELLANT: EDWARD D. HASSI, Coudert Brothers, New York, NY.
 APPEARING FOR APPELLEE: MAUREEN E. BURNS, McNerney, Fitzgerald & Tiernan, P.C., New Haven, CT.
 PRESENT: VAN GRAAFEILAND, JACOBS, and CALABRESI, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.
 
 
 3
 Plaintiff Troy Smith appeals from the district court's June 19, 1995 judgment in favor of defendant Desmond Sinclair. The court granted judgment as a matter of law to Sinclair on one count of Smith's complaint, and the jury returned a verdict for Sinclair (on June 16, 1995) on the other two counts. Smith filed a timely appeal, on June 22, 1996.
 
 
 4
 In the summer of 1990, Smith was incarcerated at the Connecticut Correctional Institute at Osborne, where Sinclair was employed as a corrections officer. On August 4, 1990, the two got into a fight while Sinclair was escorting Smith to the shower. The precise sequence of events is disputed--as seen in the conflicting testimony of the parties and other witnesses at trial--but it is clear that during the altercation Sinclair bit Smith and stabbed him with a personal knife that Sinclair was carrying in violation of Connecticut Department of Corrections regulations. The fight ended only after other officers intervened and restrained the parties.
 
 
 5
 Smith, assisted by appointed pro bono counsel, filed suit against Sinclair in the district court on October 9, 1990. Count One of the complaint, brought pursuant to 42 U.S.C. § 1983, alleged that Sinclair had violated Smith's Eighth Amendment right against cruel and unusual punishment. Counts Two and Three asserted claims for intentional and negligent assault (respectively) under Connecticut common law. A jury trial was held before Judge Chatigny from June 13 to 16, 1995.
 
 
 6
 At trial, Sinclair admitted biting and stabbing Smith, and admitted that his possession of the knife while inside the prison was contrary to regulations. Sinclair claimed, however, that he feared for his life because Smith was choking him and trying to push him over a 14 foot parapet, and that he bit Smith and used the knife only in self defense. Smith's account of the incident was wholly different. He testified that Sinclair started the altercation and stabbed him even after he (Smith) was restrained by other officers and could not defend himself. Further conflicting testimony was offered by several of the officers who were present at the scene of the fight.
 
 
 7
 Before sending the case to the jury, the district court granted Sinclair's motion for a directed verdict on the negligent assault claim. Judge Chatigny ruled that the claim for negligent assault was "redundant of the self-defense issue presented in connection with the intentional assault claim," because Sinclair still could be found liable for assault if the jury found that he had acted in self-defense but had used unnecessary and excessive force in doing so. But Judge Chatigny also stated, "perhaps more importantly, on the evidence there is no basis for a jury to exonerate [Sinclair] on the intentional assault claim, yet hold him liable on a negligent assault claim."
 
 
 8
 The jury returned a verdict in favor of Sinclair on the remaining two counts of Smith's complaint. The verdict form asked whether Smith's "right to be free from cruel and unusual punishment" had been violated, and whether Smith had proven that Sinclair had "assaulted him in violation of Connecticut law." The jury answered "no" to both questions.
 
 
 9
 Smith argues that the jury's verdicts on the intentional assault and Eighth amendment claims should be reversed because they are manifestly unjust and contrary to the evidence presented at trial. He argues that the district court erred in directing a verdict for Sinclair on the negligent assault claim, because Sinclair was negligent per se on that count. We find no merit to these arguments and affirm the judgment of the district court in all respects.
 
 
 10
 First, Smith faces a considerable procedural hurdle in seeking review of the sufficiency of the evidence underlying the jury's verdicts on the first two counts: at no time during the trial, either before or after the close of the evidence, did Smith move for judgment as a matter of law on these claims. It is elemental that a contention that "there was no evidence sufficient to justify [an] adverse verdict ... cannot be raised for the first time on appeal." Scientific Holding Co. v. Plessy Inc., 510 F.2d 15, 27-28 (2d Cir.1974); see also Clarkson Co. v. Shaheen, 660 F.2d 506, 512 n. 6 (2d Cir.1981) ("As the[ ] defendants never moved for a direct[ed] verdict, for judgment n.o.v., or for a new trial, these assertions of insufficient evidence [for the jury's verdict] need not be reviewed by us."), cert. denied, 455 U.S. 990 (1982).
 
 
 11
 It is true that, in the rare case, "this court would have the power to consider [for the first time an] appellant['s] contention [of evidentiary insufficiency] were it necessary to prevent a manifest injustice." Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 281 (2d Cir.1987); see also Rodick v. City of Schenectady, 1 F.3d 1341, 1347 (2d Cir.1993); Clarkson, 660 F.2d at 512 n. 6. That exception, however, arguably is limited to situations in which a party failed to move for a directed verdict but then--unlike Smith in this case--did make a motion for judgment n.o.v. after the jury returned an adverse verdict. See Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814, 816-17 (2d Cir.1970); Sojak v. Hudson Waterways Corp., 590 F.2d 53, 54-55 (2d Cir.1978); Scientific Holding, 510 F.2d at 28. In any event, we undertake this exceptional review only where "the undisputed evidence results in a [jury] verdict that is totally without legal support." Oliveras, 431 F.2d at 817 (emphasis added); see also Sojak, 590 F.2d at 54-55.
 
 
 12
 That narrow doctrine does not apply here. The jury's verdicts in favor of Sinclair on both the assault and Eighth Amendment claims demonstrably were not "totally without legal support." For example, Sinclair testified that he was in fear of losing his life and that he stabbed Smith only in self-defense. Given that testimony, the district court--had it been presented with a motion raising the issue--would not have erred in denying a motion for judgment as a matter of law on the intentional assault count.[1] Because the district court could not have said (as we now cannot say) that there was "no legally sufficient evidentiary basis for a reasonable jury to find for" Sinclair on the intentional assault claim, Fed.R.Civ.P. 50(a)(1), we will not disturb the jury's verdict on that claim. C.f. Reichman, 818 F.2d at 281.
 
 
 13
 Similarly, there was ample evidence from which a reasonable jury could have found for Sinclair on the Eighth Amendment claim. In "determining whether prison officials have violated the Eighth Amendment by using excessive physical force ... 'the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Branham v. Meachum, 77 F.3d 626, 630 (2d Cir.1996) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). The subjective component of this inquiry "relates to whether the defendant possessed a 'wanton' state of mind when engaging in the alleged misconduct." Branham, 77 F.3d at 630. Factors relevant to the issue of wantonness include "the need for application of force, the relationship between that need and the amount of force used, [and] the threat 'reasonably perceived by the responsible officials.' " Hudson, 503 U.S. at 7. Again, based on the (not implausible) testimony of Sinclair--that he perceived his life to be in danger and that he stabbed Smith only intending to save himself--we have no difficulty concluding that the jury's verdict on the Eighth Amendment claim was not manifestly unjust, and we therefore affirm that verdict.
 
 
 14
 Smith's remaining claim is that the district court erred by granting a directed verdict on the negligent assault count. His principal argument on appeal is that Sinclair's admitted violation of regulations prohibiting possession of unauthorized weapons establishes that Sinclair was negligent per se. Again, we decline to consider this argument because Smith failed to raise it in the district court. In fact, Smith specifically waived any right to argue such a theory of liability to the jury. In the charging conference (prior to entry of the directed verdict), Smith's counsel stated that the instructions offered by Sinclair "talk about negligence per se, and we don't have a count--we're not asking for a charge on negligence per se. So I would appreciate if that could come out...." Smith may not resurrect that argument now.
 
 
 15
 For similar reasons, we think Smith waived jury consideration of his negligent assault claim. Judge Chatigny asked Smith's counsel, "What is the evidence that you would rely on in arguing to the jury that the defendant committed a negligent assault?" Counsel's response allowed the court to conclude that the claim was a makeweight, unsupported either by evidence or a theory of liability:
 
 
 16
 I don't have any specific answer to that question, your Honor. I just feel that if the two charges [for intentional and negligent assault] are submitted to [the jury], they may come to the conclusion of trying to give Mr. Sinclair some benefit of the doubt, ... [a]nd that may drive them into the third option that they will have--i.e., the negligence count. I don't know, I have no other reason to think they would choose a negligence count.
 
 
 17
 In dismissing the negligent assault claim, the district court concluded that it would be "redundant" of the self-defense issue presented by the intentional assault claim. Smith argues on appeal that, where a party accused of intentional assault pleads self-defense, an action for negligent assault remains--even if the intentional assault count is rejected--on the issue of whether the defendant responded excessively or used more force than was reasonably necessary to defend himself. See Markey v. Santangelo, 485 A.2d 1305, 1309 (Conn.1985). But Smith rejected the explicit opportunity to invoke that very theory for the negligence claim. Judge Chatigny asked, before dismissing the negligent assault claim, "It's negligence, according to [Smith], in the sense that [Sinclair] struck him too many times? He stabbed him too many times? Is that what you're saying?" to which Smith's counsel answered, "I don't think so." When asked again, "Where was [Sinclair] negligent?" Smith's counsel relied solely upon general principles that do not resemble the theory now advanced on appeal:
 
 
 18
 Negligence ... consists of a duty owed, breach of that duty, the breach being the proximate cause, injury, damages. Okay? If you charge the jury that way, I suppose they could come to a conclusion that's what happened here, if they wanted to.... I don't know that else to tell you.
 
 
 19
 Judge Chatigny correctly stated that he could "only instruct the jury [on negligent assault] if there [was] a basis in the evidence" for such a claim. He then directed a verdict for Sinclair on the negligence claim, obviously perceiving no evidentiary basis for that claim in the record. This Court reviews the grant of a motion for a directed verdict de novo, drawing all reasonable inferences in favor of the non-moving party and upholding the verdict only if there was insufficient evidence for a rational juror to find in that party's favor. See Moretto v. G & W Elec. Co., 20 F.3d 1214, 1219-20 (2d Cir.1994). But a litigant has the burden of framing his own case. The district court barred Smith from opening to the jury on a theory as to which Smith's counsel could specify no evidence. Now on appeal, Smith urges a theory of negligent assault that he affirmatively disclaimed before the district court. Under these circumstances, we affirm the district court's decision granting judgment as a matter of law to Sinclair on the negligent assault claim.
 
 
 
 [1]
 Smith contends that, because it was undisputed that Sinclair stabbed him, and because the jury never reached the question on the verdict form whether Sinclair had acted in self-defense, the jury's conclusion that Sinclair did not "assault[ ] [Smith] in violation of Connecticut law" has no significance. But Judge Chatigny properly instructed the jury on the elements of intentional assault under Connecticut law--including the rule that an assault is "unlawful" only if it involves extremely unreasonable or "wanton" conduct and it is not "justified" by an appropriate exercise of self-defense